NOT FOR PUBLICATION [16,17]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

BEATRICE RUTH RIDDLE,    :
:
: Civil Action No. 11-1034(FLW)
Plaintiff,    :
v.    :
: OPINION
:
LIFE INSURANCE    :
COMPANY OF NORTH AMERICA,    :
:
Defendant.    :
_____:

**WOLFSON, United States District Judge:**

Presently before the Court are cross motions for summary judgment by Plaintiff Beatrice Ruth Riddle ("Plaintiff" or "Riddle") and Defendant Life Insurance of North America ("Defendant" or "LINA"). The instant motions arise out of a Complaint by Plaintiff alleging that Defendant improperly denied accidental death benefits to Plaintiff following the death of her son, Kenneth Riddle ("Mr. Riddle"), in a car crash. For the reasons that follow, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

**I. FACTUAL BACKGROUND**

Initially, the Court notes that the parties have submitted a Joint Statement of Undisputed Material Facts. Thus, the following facts are not contested.

On December 12, 2007, Kenneth Riddle ("Mr. Riddle") was 44 years old and was employed by Cablevision Systems, Inc. ("Cablevision"). Mr. Riddle was a participant in the Cablevision Systems Corporation employee benefit plan governed by the Employee Retirement

Income Security Act of 1974 ("ERISA"). As part of his benefits with Cablevision, Mr. Riddle obtained basic and supplemental Accidental Death and Dismemberment ("AD &D") insurance coverage under two separate policies – COA8777 and OK815667. Policy COA8777 provides coverage for a "covered loss" that "results, directly and independently of all other causes, from bodily Injury which is suffered in an Accident which occurs while the person is a Covered Person under the Policy." Policy COA877 defines "Accident" as "[a] sudden unforeseeable external event, which: (1) causes Injury to one or more Covered Persons; and (2) occurs while coverage is in effect for the Covered Person." This policy provides a benefit of $195,000 for a covered loss.

Separately, Mr. Riddle received additional coverage under LINA Voluntary Personal Accident Insurance Group Policy OK8815667 which provides "benefits for loss from bodily injuries: (a) caused by an accident which happens while an insured is covered by this policy; and (b) which, directly and from no other causes, result in a covered loss." This Policy provides a benefit of $250,000 for a covered loss. Unlike Policy COA877, however, Policy OK8815667 does not define the term "Accident." Under the terms of the Cablevision plan, LINA was the claims administrator for both policies.

On December 12, 2007, at approximately 11:45 p.m., Mr. Riddle died when his car collided with a tree in Colts Neck Township, New Jersey. An investigation into the crash by the fatal accident team of Monmouth County and the Colts Neck Police Department determined that Mr. Riddle was travelling east on County Road 537, a two-lane road. The investigation also indicated that the road was dry and the night was clear and the section of the road upon which Mr. Riddle was driving was straight and level. The investigation further revealed no signs indicating that Mr. Riddle took evasive action to avoid an object in the road. Moreover, data

from Mr. Riddle's car revealed that Mr. Riddle was driving at speeds in excess of 90 miles per hour immediately prior to the crash on a road with a speed limit of 45 miles per hour. A subsequent toxicological analysis of Mr. Riddle's blood revealed that his blood alcohol level at the time of his death was .222%.

     Plaintiff is the named beneficiary of the AD&D Policies. Following Mr. Riddle's death, Plaintiff filed claims for benefits. In a letter dated June 6, 2008, LINA denied the claims. In that letter, LINA explained that it had considered the Proof of Loss claim form, the Certificate of Death, the motor vehicle crash report issued by Colts Neck Township, the Monmouth County Medical Examiner's report, as well as the relevant insurance policies, and concluded that Mr. Riddle's death was not an accident. Specifically, LINA noted that Mr. Riddle was driving late a night, at a speed "no less than 98 miles per hour," and with a blood alcohol level of .222%. Moreover, LINA noted that the road upon which Mr. Riddle was driving was straight and level, that the street lights were on and that the night was clear and dry. As a result, LINA found that Mr. Riddle's death was a foreseeable result of his actions.

     Plaintiff appealed the denial. However, after further review of the claim, on September 11, 2008, LINA issued a decision maintaining its denial. On February 23, 2011, Plaintiff filed the instant Complaint. Thereafter, on June 16, 2011, both Plaintiff and Defendant filed the instant motions for summary judgment.

II. **SUMMARY JUDGMENT STANDARD**

     "Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v.

County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**III . DISCUSSION**

1. ERISA Standard and Scope of Review

The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Viera v. Life Ins. Co. Of North America, 642 F. 3d 407, 413 (3d Cir. 2011) .  In the instant matter, both Plaintiff and Defendant contend that because the plans at issue here did not grant LINA discretionary authority, this Court should review LINA's decision under a de novo, rather than an "abuse of discretion" or "arbitrary and capricious" standard.  The Court agrees and will review LINA's denial of benefits under a de novo standard.

2. Analysis

Initially, the Court notes that the crux of this dispute turns on the definition of the term "Accident." Specifically, Plaintiff argues that LINA erroneously applied a per se rule to determine that Mr. Riddle's death was foreseeable, and not accidental, based on the degree of intoxication involved.[1] Pl's Br. at 11. Instead, Plaintiff contends that a de novo review requires a finding that Mr. Riddle's death was accidental, and, therefore, covered by the Policies at issue here. On the other hand, Defendant argues that LINA properly determined that Mr. Riddle's death was not accidental based on the specific facts of the case and case law adopted by a majority of federal courts across the country.

When construing and interpreting the benefits provisions of an ERISA-regulated insurance policy, the plain language of the policy is paramount. Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006). The Court's interpretation, therefore, begins with the relevant Policy terms.

In the instant matter, Policy COA877 provides that LINA will pay accidental death benefits for "a covered loss which . . . results, directly and independently of all other causes, from bodily Injury which is suffered in an Accident which occurs while the person is a Covered Person under the policy." Cawley Cert., Ex. C. Moreover, Policy COA877 defines "Accident," as "a

---

[1] No circuit court considering drunk driving crashes has approved a claims administrator's use of a per se rule in the context of ERISA accidental death policies. To the contrary, the courts consistently have expressed disapproval for the use of such a rule. See LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan, 605 F.3d 789, 802 (10th Cir.2010) (noting that "[c]ourts have consistently rejected such a per se rule, as would we," and collecting cases); see also Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 91 & n. 9 (1st Cir.) (rejecting "categorical determination that all alcohol-related deaths are per se accidental or nonaccidental" by noting that "we have been careful to explain that the proper approach is fact-specific and that the decedent's degree of intoxication is particularly probative.")

sudden, unforeseeable external event which: (1) causes Injury to one or more Covered Persons; and (2) occurs while coverage is in effect for the Covered Person."  In addition, Policy OK815667 provides that LINA will pay benefits "for loss from bodily injuries: (a) caused by an accident which happens while an insured is covered by this policy; and (b) which, directly and from no other causes, result in a covered loss."  Cawley Cert., Ex. D.  However, unlike Policy COA877, Policy OK815667 does not provide a definition of "Accident."

Initially, the Court notes that although COA877 defines "Accident" as "a sudden, unforeseeable external event," the Policy does not define "sudden" or "unforeseeable."  Because the Policies' "undefined terms and indeed the term 'accident' are not always susceptible to easy application," federal courts regularly turn to federal common law to clarify what constitutes an "accident" under an ERISA accidental death policy.  Eckelberry, 469 F.3d at 344.  Importantly, in that regard, while there is no Third Circuit or Supreme Court decision that has determined what constitutes an "accident" under an accidental death insurance policy governed by ERISA, numerous federal courts across the country have adopted the First Circuit's opinion in Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077 (1st Cir. 1990), as setting forth the working standard for determining what constitutes an "accident" under ERISA.  See, e.g., Eckelberry, 469 F.3d at 343-45; Lennon v. Metro. Life Ins. Co., 504 F.3d 617, 622-23 (6th Cir. 2007); Cozzi v. Metro Life Ins. Co., 140 F.3d 1104, 1110 (7th Cir. 1998); Weatherall v. Reliastar Life Ins. Co., 398 F. Supp. 2d 918, 924 (W.D. Wis. 2005); Mullaney v. Aetna U.S. Healthcare, 103 F. Supp. 2d 486, 494 (D.R.I. 2000).

In Wickman, an insurance company denied accidental death benefits to an insured who fell, or jumped, forty or fifty feet from a bridge.  Wickman's accidental death policy defined

7

"accident" as "an unexpected, external, violent and sudden event." 908 F.2d at 1088. The insurer claimed that the death was not accidental because Wickman deliberately climbed over the bridge's guardrail and extended himself from the bridge by one hand and therefore, that he must have expected that he would fall and kill himself or, at the least, significantly injure himself. The insured's widow argued that only if her husband intended to commit suicide could the incident not have been an accident.

In determining what constituted an accident, the First Circuit adopted a two-step inquiry. First, the fact-finder should attempt to ascertain whether the insured expected an injury similar to that suffered. If the insured did not expect such an injury, the fact-finder must then ask whether that expectation was reasonable. The reasonableness of the insured's expectation "should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." 908 F.2d at 1088. This requirement "will prevent unrealistic expectations from undermining the purpose of accident insurance." Id. Next, if the evidence is insufficient to determine an insured's subjective expectation, the fact-finder should then engage in an objective analysis of a reasonable person's expectations. "In this analysis, one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." Id. at 1088. If a reasonable person would have expected the injury to occur as a result of the insured's actions, then the injury suffered is not an accident.[2]

---

[2] Although the facts of Wickman do not involve driving while intoxicated, numerous courts have recognized the applicability of the Wickman test in cases involving drunk driving and have determined that death resulting from such activity is not accidental. See, e.g., Cozzie

As noted above, while a majority of federal courts addressing the question of whether a drunk driving death is an "accident" under ERISA have recognized and adopted Wickman, recently, in LaAsmar v. Phelps Dodge Corp. Life Accidental Death and Dependent Life Insurance, 605 F.3d 789 (10th Cir. 2010), the Tenth Circuit Court of Appeals declined to adopt the Wickman framework. In LaAsmar, the court considered whether plaintiff's death was accidental when he died in a single-vehicle crash after driving 60 miles per hour in a 40 mile per hour zone and with a blood alcohol content of .227%. There, the court began its analysis by considering whether a reasonable person in plaintiff's position would have understood the term "accident" to cover the crash in which he died. "In determining whether the crash at issue in this case was an 'accident,' we consider the common and ordinary understanding of the word 'accident,' as a reasonable insured would understand the term, but in doing so we construe the meaning of that term in" plaintiff's favor and against the insurer. Id. at 806. The Court went on to describe a spectrum of conduct ranging from non-accidental to accidental. On one end of this spectrum, the court explained, was conduct that a reasonable person would not consider accidental including "if the insured intentionally caused the crash; if the insured died as a result of playing Russian roulette; or if an insured died in his vehicle while playing 'chicken' with a train or another vehicle." Id. at 807. At the other end of the spectrum, the court explained, was

---

v. Metro. Life Ins. Co., 140 F.3d 1104, 1109-10 (7th Cir.1998); Weatherall v. Reliastar Life Ins. Co., 398 F. Supp.2d 918, 924 (W.D.Wis.2005); Mullaney v. Aetna U.S. Healthcare, 103 F.Supp.2d 486, 494 (D.R.I.2000); Sorrells v. Sun Life Assurance Co., 85 F. Supp.2d 1221, 1232-35 (S.D.Ala.2000); Walker v. Metro. Life Ins. Co., 24 F. Supp.2d 775, 782 (E.D.Mich.1997); Schultz v. Metro. Life Ins. Co., 994 F. Supp. 1419, 1422 (M.D.Fla.1997); Nelson v. Sun Life Assurance Co., 962 F. Supp. 1010, 1012 (W.D.Mich.1997); Miller v. Auto-Alliance Int'l, Inc., 953 F. Supp. 172, 176-77 (E.D.Mich.1997); Cates v. Metro. Life Ins. Co., 14 F. Supp.2d 1024, 1027 (E.D.Tenn.1996), aff'd, 149 F.3d 1182 (6th Cir.1998); Fowler v. Metro. Life Ins. Co., 938 F. Supp. 476, 480 (W.D.Tenn.1996).

conduct that a reasonable person would believe to be accidental, including if "he lost control of his vehicle while talking on a cell phone or moderately speeding or becoming distracted by children in the back seat." Id. at 807.  In addition, the court noted that "[m]ost people . . . would define accident to include many circumstances where a driver undertakes conduct that makes a crash more likely, such as driving while sleepy or when the weather is bad, or talking on the cell phone, reaching for a compact disc, or turning to speak to a child while operating a vehicle. . . Each of these volitional acts increases the probability of a wreck, some arguably to an even greater degree than driving drunk . . . and yet, in each of these cases, reasonable people (and courts) generally consider a resulting wreck to be an 'accident.'" Id.

After setting forth this spectrum of conduct, the LaAsmar Court held that the plaintiff's conduct fell "in the middle of this spectrum."  Specifically, the court found that "a reasonable person would believe that [plaintiff's] death in a one-car rollover crash . . . was the result of an 'accident'" and in making such a determination, the court "focus[ed] not exclusively on the fact that [plaintiff] had a .227 BAC, becasue we have already rejected the application of a blanket per se rule denying coverage anytime an insured exceeds the legal BAC limits in the absence of explicit langauge in the Plan.. . .[i]nstead. . .we focus on [plaintiff's] specific conduct, driving with a BAC of .227 early in the morning on a two-lane rural road, exceeding the posted speed limit by twenty miles per hour." Id.  In light of this conduct, the court found that "[a] reasonable person would call the resulting rollover an 'accident.'  That would be true whether [plaintiff] wrecked his truck because he fell asleep or lost control because he was speeding.  It should also be true if he ran off the road because he had a BAC of .227.  In our judgment, none of these circumstances is so extreme that a reasonable person would think they fell outside the realm of

10

an 'accident' sufficient to trigger payment of AD&D benefits." Id. As a result, the court held that plaintiff's death was an accident sufficient to trigger benefits under the relevant policy.

Although this Court appreciates the Tenth Circuit's discussion of a spectrum of hypothetical conduct ranging from the accidental to the non-accidental, the Court finds this analysis neither persuasive nor applicable. Instead, I find that the Tenth Circuit's analysis raises more questions than it answers. For example, although on first glance it appears that the Tenth Circuit is setting forth a bright line rule that all drunk driving deaths should be considered accidents, that is not, in fact, what the court did. Upon further review, it appears that the court did not set forth any bright line rules and, instead, recognized the possibility of a situation where a drunk driver "would be so drunk that a resulting wreck could no longer be deemed an accident." Id. However, the Tenth Circuit did not enumerate the contours of a situation in which a drunk driving death would be deemed not accidental; in fact, absent from the LaAsmar court's analysis, is an enumeration of any factors that a court should consider in deciding whether something is accidental, and covered by an AD&D policy, or not accidental, and therefore, not covered by an AD&D policy. In order to ensure more certainty in the analysis, this Court, along with a majority of federal courts to consider this issue, will adopt the Wickman framework to determine what constitutes an "accident" under an accidental death insurance policy governed by ERISA.

Applying the rule of Wickman, this Court holds that Mr. Riddle's death cannot be deemed an accident. Initially, as discussed above, the Court rejects a per se approach to determining whether the conduct at question was accidental by looking solely at the insured's level of intoxication. See supra n. 1. Instead, this Court will consider the totality of the

11

circumstances that caused Mr. Riddle's death.

For example, in Mullaney, the court upheld an administrator's denial of accidental death benefits following a de novo review. 103 F. Supp. 2d at 494. There, the insured had been driving at a speed in excess of the 40 mile per hour speed limit shortly after midnight when his car crossed the road and collided with a tree. Id. at 488. Moreover, the court noted that there were no skid marks on the ground or pavement and that subsequent testing of the rear brake lights revealed that the insured had made no attempt to apply the brakes before hitting the tree. Moreover, a toxicology report revealed that at the time of death, the insured had a blood alcohol content that was nearly four times the legal limit. Id. As a result, the court held that even if the insured did not intend or foresee any harm in attempting to drive while intoxicated, a reasonable person would have known that driving under these conditions would likely result in serious bodily harm or death. Id. at 494.

Similarly, in Poeppel v. The Hartford Life Ins. Co., 273 F. Supp. 2d 714 (D.S.C. 2003), following a de novo review, the court upheld an insurer's denial of benefits to an insured who died in a single car wreck at 3:48 a.m. There, the insured had lost control of his vehicle and it swerved on and off the roadway until it eventually struck a tree. The court noted that the insured was not wearing a seatbelt and that unopened alcohol containers were found at the scene. Moreover, the insured had a blood alcohol content of .212%. Id. at 720. As a result, the court held that the death was not accidental. Again, in Richardson v. Mutual of Omaha Ins. Co., Civ. A. No. 06-197, 2007 WL 1577942 (May 31, 2007), following a de novo review, the court upheld an administrator's denial of accidental death benefits when the insured died after losing control of his vehicle when he was attempting to turn onto an exit ramp. There, the court noted that the

insured had a blood alcohol content nearly six times Kentucky's legal limit and that he had not attempted any defensive driving maneuvers to prevent the crash. Id. at *1.[3]

Unlike Mullaney, Poeppel and Richardson, the court in LaAsmar upheld a district court's de novo review holding that an insured's death was accidental. There, the court focused on the facts that the insured was exceeding the speed limit by only 20 miles an hour and driving with a BAC of .227. In light of these factors, the court found that the circumstances were not "so extreme that a reasonably person would think they fell outside the realm of an accident sufficient to trigger payment of AD&D benefits." 605 F.3d at 808.

In the instant matter, Mr. Riddle was driving at 11:45 p.m. and at an excessive rate of speed – approximately 98 miles an hour in a 45 mile per hour zone. Thus, as in Mullaney, Mr. Riddle's excessive speeding, as well as the late hour at which he was driving, would have rendered his actions unsafe. Indeed, unlike the insured in LaAsmar who was driving just 20 miles over the speed limit, Mr. Riddle was driving more than 50 miles over the speed limit. Moreover, on the night in question, Mr. Riddle had also consumed enough alcohol to give him a

---

[3]In addition, although numerous courts have reviewed the denial of benefits under an arbitrary and capricious standard and found that deaths resulting from drunk driving were not accidental, the Court finds it more appropriate to rely on the above cases which utilize a de novo standard. See, e.g., Cozzie, 140 F.3d at 1109-10 (7th Cir.1998); Cates v. Metro. Life Ins. Co., 149 F.3d 1182 (Table), 1998 WL 385897, *3, 1998 (6th Cir. June 30, 1998); Arnold v. Hartford Life Ins. Co., 542 F.Supp.2d 471, 476-81 (W.D.Va.2008); Moore v. Life Ins. Co. of N. Am., No. 5:05cv169, 2007 WL 201068 (N.D.W.Va. Jan. 23, 2007), rev'd and vacated on other grounds, 278 Fed.Appx. 238 (4th Cir.2008); Sorrells v. Sun Life Assurance Co., 85 F.Supp.2d 1221, 1232-36 (S.D.Ala.2000); Nelson v. Sun Life Assurance Co. of Canada, 962 F.Supp. 1010 (W.D.Mich.1997); Schultz v. Metro. Life Ins. Co., 994 F.Supp. 1419, 1422 (M.D.Fla.1997); Miller v. Auto-Alliance Int'l, Inc., 953 F.Supp. 172, 176-77 (E.D.Mich.1997); Fowler v. Metro. Life Ins. Co., 938 F.Supp. 476, 480 (W.D.Tenn.1996).

blood alcohol level of .222%, nearly three times the legal limit.  At this level of intoxication, and at that high speed, Mr. Riddle likely had little control over his physical or mental faculties. Further, as in Mullaney, there was no evidence that Mr. Riddle took any evasive action to avoid crashing into the tree which ultimately caused the car wreck. Cawley Cert., Ex. H.  After considering all these factors, the Court finds that Mr. Riddle's death cannot be considered an accident.

Even were this Court to assume that Mr. Riddle himself may not have intended or foreseen any harm in attempting to drive while grossly intoxicated and at an extremely high rate of speed, a reasonable person would have known that driving while under the influence, very late at night and at highly unsafe speeds would likely result in serious bodily harm or death. Moreover, as in Mullaney, the fact that Mr. Riddle did not appear to take any evasive action to avoid crashing into a tree, whether because he had fallen asleep, had lost control of his faculties, or for any other reason, leads this Court to find that Mr. Riddle's actions fail the Wickman test and that his death cannot be considered "accidental."  As a result, LINA was correct to deny benefits to Plaintiff.

Finally, to the extent that Plaintiff argues that LINA should pay benefits arising from Mr. Riddle's death because death resulting from driving while intoxicated was not an exclusion specifically enumerated in either of the Policies, the Court does not agree.  Indeed, it is well-established that coverage under an insurance policy extends to those risks that are included in the coverage provision of the policy. See, e.g., Weedo v. Stone–E–Brick, Inc., 81 N.J. 233, 237-38 (1979) ("[T]he premium paid by the insured does not buy coverage for all ... damage but only for that type of damage provided for in the policy"); Am. Jur. 2d Insurance § 1548 (2011) (As a

rule, the doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, "are not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom."). It is uncontested that the Policies at issue here provide coverage for accidents only. Thus, as discussed throughout this Opinion, the issue for LINA, initially, and for this Court, on de novo review, is to determine whether Mr. Riddle's death was accidental, and, therefore, covered by the Policies or, non-accidental, and, therefore, not covered by the Policies. For the reasons discussed above, and in light of the majority of federal precedent, the Court finds that Mr. Riddle's death, although certainly tragic, was not an accident as required for coverage under the Policies at issue here.

**IV. CONCLUSION**

      For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's motion for summary judgment is DISMISSED.

Dated: October 11, 2011                        /s/ Freda L. Wolfson
                                                                   Freda L. Wolfson, U.S.D.J.